UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
RALPH ABEKASSIS,

                      Plaintiff,                    COMPLAINT FOR INJUNCTIVE
                                                AND DECLARATORY RELIEF

           -against-

NEW YORK CITY, New York,
JAMES O'NEILL, in his official capacity as
Police Commissioner, and all successors therein,
JONATHAN DAVID, in his official capacity        Case No.: 19 Civ. 8004
as Director, NYPD License Division, and
MICHAEL BARRETO, in his official capacity
as Commanding Officer of the License Division,

                    Defendants.
------------------------------------------------------x

       Plaintiff, RALPH ABEKASSIS, by and through his attorneys, states as his complaint for

declaratory and injunctive relief against the defendants as follows:

## NATURE OF THE ACTION

       1.     This is an action for declaratory and injunctive relief to (1) declare 38 RCNY 5-10

(a), (h), (l), and (n) facially unconstitutional, burdensome, and in violation of fundamental rights

protected by the Second Amendment; (2) declare 38 RCNY 5-10 (a), (h), (l), and (n)

unconstitutional, burdensome, and in violation of the Second Amendment as applied to the

plaintiff; (3) enjoin the defendants, their officers, agents, servants, employees, and all persons

acting in concert with the defendants who receive actual notice of the injunction, from enforcing

and implementing 38 RCNY 5-10 (a), (h), (l), and (n); (4) enjoin the defendants, their officers,

agents, servants, employees, and all persons acting in concert with the defendants who receive

actual notice of the injunction, from enforcing and implementing Penal Law §265.01(1),

§265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) against law-abiding individuals, having

no enumerated statutory prohibitors to firearm possession, who have been denied a handgun license for their residence under the provisions of 38 RCNY 5-10 (a), (h), (l) and/or (n) and possess handguns inside of their residence for self-defense without a Premise Residence License.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, §1343, §2201, §2202 and 42 U.S.C. §1983 and §1988.

3.      Venue lies in this Court pursuant to 28 U.S.C. §1391.

## PARTIES

4.      Plaintiff Ralph Abekassis is a natural person, a citizen of the United States and of the State of New York, and a resident of Kings County, New York.

5.      Defendant New York City, New York is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

5a.     Defendant James O'Neill, who is sued herein in his official capacity only, is the Police Commissioner of the New York Police Department ("NYPD"). In that position, Commissioner O'Neill is the designated Pistol Licensing Officer for the five (5) boroughs comprising New York City: the counties of Bronx, New York, Richmond, Kings, and Queens (the "City" or "New York City").

6.      As the Pistol Licensing Officer for New York City, Commissioner O'Neill is a policy maker with respect to the customs, policies, and procedures promulgated by and through the NYPD License Division and the NYPD Appeals Unit related to the issuance of handgun licenses in New York City.

7.      Commissioner O'Neill, derives his authority as the Pistol Licensing Officer for New York City from Penal Law §265.00(10).

8.     Defendant Jonathan David, who is sued herein in his official capacity only, is the Director of the NYPD License Division, as designated by Commissioner O'Neill.

9.     Defendant Inspector Michael Barreto, who is sued herein in his official capacity only, is designated by Commissioner O'Neill and/or Jonathan David, as the individual authorized to approve or deny handgun applications in the first instance.

10.     Commissioner O'Neill delegated, at least in part, his licensing authority to Inspector Barreto who is duly authorized to approve and/or issue handgun licenses in the first instance.

11.     Commissioner O'Neill delegated, at least in part, his licensing authority to Inspector Barreto who is duly authorized to disapprove handgun license applications.

12.     In the event that Inspector Barreto disapproves a handgun license application in the first instance, the applicant may file an internal appeal with the NYPD Appeals Unit within 30 days of receiving the Notice of Disapproval.

13.     Mr. David is the Director of the NYPD License Division Appeals Unit.

14.     Commissioner O'Neill delegated, at least in part, his licensing authority to Mr. David who is authorized to consider and decide internal appeals of handgun disapprovals from the License Division/Inspector Barreto and to render final decisions on such internal appeals.

15.     Commissioner O'Neill delegated, at least in part, his licensing authority to Mr. David who is authorized to render final determinations approving or disapproving an applicant's handgun license application.

16.     Commissioner O'Neill and his agents and employees, including the named defendants, are responsible for enforcing and implementing the provisions of 38 RCNY 5, *et seq.*

17.     Commissioner O'Neill and his agents and employees, including the named defendants, are responsible for enforcing and implementing Penal Law §265.01(1), §265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) against New York City residents, including law-abiding individuals, having no enumerated statutory prohibitors to firearm possession, who possess handguns inside of their residence for self-defense, with or without a Premise Residence License.

## STATEMENT OF FACTS

*Ralph Abekassis – Application for Residence Handgun License*

18.     Ralph Abekassis is 33 years of age and was born and raised in Brooklyn, New York.

19.     At all relevant times herein, Mr. Abekassis was, and continues to be, a resident of the borough of Queens, New York.

20.     Residents of the five boroughs of New York City may not lawfully possess any firearm in their residence for self-defense without being issued a license by the New York City Police Department.

21.     As a resident of one of the five boroughs of New York City, Mr. Abekassis may not lawfully possess a handgun in his residence for self-protection without being issued a handgun license by the New York City Police Department.

22.     In 2018, Mr. Abekassis applied to the NYPD License Division for a license to possess a handgun in his residence for self-protection.

23.     The NYPD refers to a license to possess a handgun in one's home for self-defense as a "Premise Residence Handgun License" ("Residence license").

4

24.     To maintain proficiency in the use of the handgun(s), the licensee may transport

his/her handgun(s) directly to and from an authorized small arms range/shooting club, unloaded,

in a locked container, the ammunition to be carried separately. 38 RCNY § 5-23.


***Inspector Michael Barreto - Disapproval of Application***

25.     On January 24, 2019, Inspector Barreto disapproved Mr. Abekassis' application

for a Residence license by way of a Notice of Disapproval.

26.     The grounds for Inspector Barreto's disapproval of Mr. Abekassis' application

were: two prior arrests, motor vehicle-related summonses, and Mr. Abekassis' driving history as

reflected on a "lifetime abstract" with the New York State Department of Motor Vehicles

("DMV").

***Internal Appeal to NYPD License Division, Appeals Unit***

27.     A handgun license applicant may file an internal appeal of a handgun license

application disapproval within 30 days of the date of the Notice of Disapproval.

28.     On February 14, 2019, Mr. Abekassis filed an internal appeal of Inspector

Barreto's Notice of Disapproval with the NYPD Appeals Unit.

29.     In accordance with the NYPD Appeals Unit requirements, Mr. Abekassis' internal

appeal included a written statement that was Notarized and Verified by Mr. Abekassis under the

penalty of perjury.

30.     The substance of Mr. Abekassis' Verified statement to the Appeals Unit was as

follows:

> "By way of background, Mr. Abekassis, age 33, was born and raised in
> Brooklyn, New York, where he lived with his parents and three (3) siblings.
> Mr. Abekassis graduated from Sheepshead Bay High School and went on to

Kingsborough Community College. After a few semesters, Mr. Abekassis transitioned to his family's business as a general contractor.  In 2006, Mr. Abekassis founded his own business, Dancoby Construction."

"The License Division disapproved Mr. Abekassis' application based on the following:

- Arrest on 10/24/2001 (Arson-2nd);
- Arrest on 7/11/2006 (Agg. Unlicensed – 3rd);
- Summons on 10/8/2005 (NYC Commercial Tax);
- Summons on 10/8/2005 (Improper Registration);
- Summons on 10/8/2005 (Improper Plates);
- Summons on 5/2/2006 (Unauthorized in the Park);
- Summons on 7/9/2011 (No Registration Number);
- Driving History (16 moving violations from 1/25/2005 – 9/12/2018); and
- Driving History (6 suspensions between 2/22/2006 – 2/29/2016)."


"On October  24, 2001,  Mr. Abekassis  was 16 years old. On that  date, he was visiting  a friend at the friend's apartment  building. The two were in the lobby of the apartment building when his friend was playing with a lighter, however, nothing was lit on fire and nothing caught on  fire. The  arrest  was  referred  to the  Family  Court  Division  of  the  City of  New  York  Law Department, which  declined  to  prosecute  the  charge  against Mr.  Abekassis. See the attached letter from Deputy Borough Chief of the Family Court Division."

"On October 8, 2005,  Mr. Abekassis was issued summonses for having  an improper license plate, improper  registration and commercial  tax. The aforementioned summonses were related to Mr. Abekassis' van, which was not registered as a commercial vehicle. The summonses were thereafter dismissed because the van was, in fact, determined not to be a "commercial" vehicle. See the attached Certificate of Disposition."

"On May 2, 2006, Mr. Abekassis was given a summons for being in a park after dark (at 11:30 p.m.). Mr. Abekassis  pled  guilty to the non-criminal violation and paid a $25  fine. See the attached Certificate of Disposition."

"On July 11, 2006, Mr. Abekassis (21 years of age) was issued a summons for Aggravated Unlicensed Operation in the Third Degree for not having paid tickets. The charge was reduced to a violation of VTL § 509, to which Mr. Abekassis pled guilty to the non-criminal  violation and paid a fine of $15. See the attached Certificate of Disposition."

"On July 9, 2011, Mr. Abekassis was issued a summons for operating an 8-foot aluminum boat without having any registration numbers. Mr. Abekassis  was not aware of the registration requirements and immediately  registered  the

boat after being issued  a summons. The summons was dismissed on September 9, 2011. See the attached Certificate of Disposition."

"Between 2006 and 2011, a total of 51 scofflaws were issued against Mr. Abekassis: 3 scofflaws were issued for the same infraction date, 2/22/06, which were paid and cleared within 8 days; 1 on  4/16/07, which was paid and cleared the next day (4/17/07), and 1 on 12/1/11, which was paid and cleared five days later (12/6/11). Once Mr. Abekassis was made aware of his failure to answer for the tickets, he immediately addressed the transgression and paid the necessary fines."

"Between 2005 and 2014 (a span of approximately 10 years), Mr. Abekassis received a total of 14 tickets for moving violations. In the 4.5 years since Mr. Abekassis' last ticket on June 18, 2014, he has not received any additional tickets for moving violations. A copy of Mr. Abekassis' DMV Abstract is annexed hereto."

"On May 2, 2015, Mr. Abekassis enrolled in and completed an accident prevention course, which allowed the reduction of points against his license for the infractions incurred as far back as 11/2/2013."

"The right to possess firearm in one's home for self-defense is a core and fundamental right  protected by the Second  Amendment. *D.C. v. Heller*, 554  U.S.  570, 626-27, 128 S.Ct. 2783, 2816-17 (2008)."

"Mr. Abekassis has no criminal convictions and no legal state or federal prohibitors to the lawful possession of fireanns, whether handgun or longanns. Indeed, nothing in Mr. Abekassis' history as detailed herein [sic] warrants the government's elimination of his basic and fundamental right to self-protection in his home. See, *District of Columbia v. Heller*, 554 US at 595-599, 628. (The Second  Amendment  protects the core right of the individual to handgun possession  in the home  for self-protection.); *McDonald v City of Chicago*, 561 US at 767, citing, *District  of Columbia v. Heller*, 554 U.S. 570, 599 "Individual self-defense is the central component of the Second Amendment right") (internal quotations omitted)."

"Based on the above, and the within Verification and exhibits, Mr. Abekassis  meets  all eligibility  requirements under Penal Law §400.00(1)  for the issuance of a Premise Residence License and there is no legal basis to deny his application. See, e.g., *D.C. v. Heller*, 554 U.S. 570, 626-27,  128 S. Ct. 2783,  2816-17  (2008) (While  the  States  have  the authority to regulate the licensing of firearms, they cannot  unreasonably  restrict a citizen's inherent Second  Amendment right to possess firearms, particularly in the home, which is a right codified in, and protected by, the Second Amendment.)."

7

"Based on the above, it is respectfully requested that Mr. Abekassis'
application be granted in its entirety.  Thank you for your consideration in this
matter."

***NYPD Appeals Unit - Notice of Disapproval After Appeal***

31.     On or about April 23, 2019, Jonathan David issued a "Notice of

Disapproval After Appeal" ("Disapproval After Appeal") confirming the disapproval of

Mr. Abekassis' application for a Residence Handgun License.

32.     The substance of the Disapproval After Appeal was as follows:

"I am writing in response to your appeal of the disapproval of Ralph
Abekassis' Premises Residence handgun license application. Your appeal is
denied."

"Section 400.00 of the New York State Penal Law states that 'no license
shall be issued except for an applicant... (b) of good moral character ... and;
(n) concerning whom no good cause exists for the denial of the license.'
Title 38 of the Rules of The City of New York (RCNY)."

"Section 5-10, provides a list of what shall be considered in assessing
moral character and whether good cause exists for a denial. Pursuant to 38
RCNY 5-l0(a), the License Division considers the facts and circumstances
surrounding an applicant's arrests.  The License Division is entitled to consider
the circumstances surrounding arrests even where the charges were dismissed
or otherwise resolved in the applicant's favor. Further, New York State
Criminal Procedure Law (CPL) Section 160.S0((l)(d)(iii) makes sealed arrests
available to any agency responsible for issuing firearms licenses.  Further, the
License Division considers information that demonstrates an applicant's
unwillingness to abide by the law."

"On 7/11/06, Mr. Abekassis was arrested for Aggravated  Unlicensed
Operation, 3rd Degree. As you note in your appeal, he pleaded guilty to VTL
509, operating a vehicle without a driver license. Additionally, as you
acknowledge in your appeal, on 10/24/01, Mr. Abekassis was arrested for
Arson, 2nd Degree, a felony.  Because of Mr. Abekassis' age at the time, 15,
the matter was referred for juvenile prosecution, and the New York City Law
Department declined to prosecute."

"The License Division considers an applicant's poor driving history, and
multiple driver license suspensions. 38 RCNY 5-10(h).  Also, pursuant to 38

RCNY 5-10(n), the License Division considers information that demonstrates an applicant's 'lack of concern for oneself and/or other persons and/or for public safety.' In your appeal, you claim that the Notice of Disapproval mistakenly indicated 'the existence of six scofflaws.' The Notice of Disapproval stated that Mr. Abekassis' driver license had been suspended six times between 2/22/06 and 2/29/16. A review of Mr. Abekassis' Department of Motor Vehicles Abstract, however, reveals that his license was suspended nine times.  His license was suspended five times due to unpaid fines and on four occasions for non-scofflaw related reasons. Because the Notice of Disapproval indicated that Mr. Abekassis' license was six times, rather than nine, you may file an Amended Appeal regarding this issue within 30 days of the date of this letter."

"In your appeal, you state that the Notice of Disapproval  mistakenly states that Mr. Abekassis received  16 moving violation summonses, when in fact, he received 14 summonses. You are correct.  Mr. Abekassis received 14 summonses between 2005 and 2014.  Mr. Abekassis' 14 summonses (and convictions) for moving violations demonstrate a lack of concerns for himself and others."

"Finally, your claim that the disapproval of Mr. Abekassis' Premises Residence handgun license violates the Second Amendment lacks merit."

"For the reasons stated above, your appeal of the disapproval of your Premises Residence handgun license application is denied."

33.    The Disapproval After Appeal provided no additional information regarding Mr. Abekassis' two prior arrests other than what is reflected immediately above.

34.    Mr. Abekassis' application for a Residence license was denied because of the defendants' enforcement and implementation of 38 RCNY 5-10 (a), (h), and (n).

35.    Mr. Abekassis intends to exercise his Second Amendment right to possess a handgun in his home for self-protection notwithstanding New York City's unconstitutional regulations, the defendants' enforcement and implementation of such regulations, and the absence of a handgun license.

36.     Mr. Abekassis' exercise of his Second Amendment right to handgun possession will subject him to criminal prosecution, including incarceration and fines.

37.     If Mr. Abekassis is convicted of unlawful possession of a firearm, such conviction will be prohibit his lawful possession of a firearm in the future, as it will constitute either a felony or "serious offense".

38.     Mr. Abekassis should not be forced to choose between exercising his fundamental and pre-existing right to possess firearms in his home for self-defense and being subjected to criminal prosecution.

## STATEMENT OF LAW

### *The Second Amendment*

39.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

40.     The Second Amendment does not *bestow* any rights to the individual to possess and carry weapons to protect himself; it *prohibits the government* from infringing upon the basic, fundamental right of the individual to keep and bear arms for self-defense in the event of a violent confrontation. *District  of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S.  (2016).

41.     "Individual self-defense is the central component of the Second Amendment right." *McDonald v City of Chicago*, 561 US at 767, citing, *District of Columbia v. Heller*, 554 U.S. 570, 599 (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *District of Columbia v. Heller*, 554 US at 595-599, 628.

10

42.     The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald v City of Chicago*, 561 US 742, 768 (2010).

43.     The right of law-abiding responsible citizens to use arms in the defense of hearth and home is a fundamental right protected by the Second Amendment. *District of Columbia v. Heller*, 554 US 570, 635 (2008).

44.     Second Amendment guarantees are at their zenith within the home. *Kachalsky v County of Westchester*, 701 F3d 81, 89 (2d Cir 2012) citing, *Heller*, 554 U.S. at 628-29.

45.     The Second Amendment's protections are fully applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026, 3042, 177 L. Ed. 2d 894 (2010).

### *New York is a "Shall Issue" State for Handgun Possession and Licensing*

46.     New York Penal Law §400, *et seq.* is the enabling statute regulating the possession and licensing of firearms in the State of New York.

47.     Penal Law §400, *et seq.* preempts any and all local laws, codes, and regulations relating to firearm possession and licensing. The comprehensive and detailed regulatory language and scheme of §400.00 demonstrates the legislature's intent to preempt the field of firearm regulation in the state. See, *Matter of Chwick v Mulvey*, 81 AD3d 161, 163 (2d Dept 2010) (holding that §400 preempted Nassau County's local ordinance criminalizing the possession of certain types of handguns because, where as here the state "legislature demonstrate[s] its intent to preempt the field, all local ordinances are preempted regardless of whether they actually conflict with the state law").

11

48.     Where an individual has no prohibitors to the possession of firearms, New York State Penal Law §400.00(2) provides, "A license for a pistol or revolver, other than an assault weapon or a disguised gun, ***shall be issued*** to (a) have and possess in his dwelling by a householder. (emphasis added).

49.     Under Penal Law §400.00(1), "No license shall be issued or renewed except for an applicant who meets the eligibility requirements of (a) – (n), which include [in the negative] an applicant who does not have a conviction for a felony or serious offense; is not an unlawful user of or addicted to any controlled substances; is not a fugitive from justice; has not been dishonorably discharged from the military; has not been adjudicated mentally defective or involuntarily committed to a mental institution; who has not had a license revoked or who is not under a suspension or ineligibility order issued related to an Order of Protection; who has not had a guardian appointed for them as a result of mental incapacity (and the like); and "(n) concerning whom no good cause exists for the denial of the license".

50.     Similarly, federal law prohibits possession of firearms by individuals who have the same infirmaties: dishonorably discharged from the military; felony conviction; misdemeanor conviction for domestic violence; fugitive from justice; unlawful user of or addicted to any controlled substance; is subject to a Court Order of Protection; and *inter alia,* has been adjudicated as a mental defective or who has been committed to a mental institution. See, 18 USC 922(g).

51.     The prohibitors to the issuance of a handgun license enumerated in Penal Law §400 are consistent with the legal prohibitors to the possession of ***any*** firearm – handgun or longarm – under federal law.

52.     In *District of Columbia v. Heller*, 554 US 570, 627 n.26 (2008), the Supreme Court recognized that "laws prohibiting the exercise of the right to bear arms by felons and the mentally ill are 'presumptively lawful'".

53.     The common denominator of each of the enumerated prohibitors to handgun possession considered by the NYS Legislature, and thereafter codified in §400.00(1), is that they involve legal circumstances that encompass some legal process – due process and/or some type of legal adjudication proving the underlying infirmity. Likewise are the prohibitors identified by Congress in 18 USC §922(g).

54.     For example, a *conviction* of a felony or serious offense is the result of a plea of guilty or a trial on the merits of the charge; an *adjudication* as a mental defective results from a formal court process; a dishonorable discharge from the military occurs after a court-martial proceeding; having a guardian *appointed* by the court as a result of a formal hearing; being subject to a court's Order of Protection (which, though issuable *ex parte* can be immediately challenged under the Family Court Act and/or Criminal Procedure Law depending on the jurisdiction of the issuing court).

55.     None of the enumerated prohibitors to handgun possession – state or federal - is based on a mere accusation without any subsequent formal legal process adjudicating the underlying statutory imfirmity.

56.     Each of the prohibitors enumerated by the NYS Legislature [and the United Stated Congress] are a result of (1) a formal adjudication process relating to (2) events serious enough to rise to the level of warranting the elimination of an individual's pre-existing right protected by the US Constitution from governmental infringement.

57.     Neither §400 nor §922(g) prohibits, or contemplates the prohibition of, handgun possession by law-abiding individuals based on an arrest, dismissed charges, petty summonses, or traffic infractions.

***State Regulation of Firearms Does not Reduce the Second Amendment to a "Privilege"***

58.     Throughout the State of New York, the possession of a handgun requires the issuance of a pistol license.

59.     A law-abiding individual who possesses a handgun in New York State, loaded or unloaded, without having been issued a handgun license is subject to criminal prosecution, including incarceration, fines, and the loss of the right to possess firearms in the future.

60.     A law-abiding individual who possesses a handgun, rifle, or shotgun in any of the 5 boroughs of New York City, loaded or unloaded, without having been issued a license to possess such firearm by the NYPD, is subject to criminal prosecution, including incarceration, fines, and the loss of the right to possess firearms in the future.

***The Ability of the States to Regulate Firearms Does Not Reduce the Right to a 'Privilege'***

61.     While the courts have recognized the states' authority to regulate firearms within the state, New York State's requirement that handguns be licensed for possession one's residence does not reduce the right to possess a handgun in the home to a mere 'privilege'. See, e.g., *United States v Laurent*, 861 F Supp 2d 71, 100 (EDNY 2011) citing, *United States v. Barton*, 633 F.3d 168, 170-71 (3d Cir. 2011) ("At the 'core' of the Second Amendment is the right of law-abiding, responsible citizens to use arms in defense of hearth and home."); *Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home").

62.     Denial of an application for a "residence" handgun license implicates an enumerated and cognizable Constitutional right falling within the scope of Second Amendment protections. See, *District of Columbia v Heller*, 554 US 570 (2008). The right to use handguns for the purpose of self-defense in the home falls within the scope of Second Amendment protectons. *Heller.*

63.     Strict scrutiny is warranted where the government burdens a fundamental, core right to self-defense in the home by a law-abiding citizen. *Kachalsky v Cacace*, 817 F Supp 2d 235, 268 (SDNY 2011) (internal citations omitted) (applying intermediate scrutiny to §400 concealed carry provisions, while the court concomitantly noted that Penal Law §400.00(2) *requires* pistol permits to be issued to eligible individuals for home possession - "shall be issued to . . . have and possess in his dwelling by a householder".).

### *38 RCNY 5-10*

64.     Handguns are the most common, and the preferred modality and means of self-protection in the home. *District of Columbia v Heller*, 554 US at 628, citing, *Parker v District of Columbia*, 375 US App DC 140, 169, 478 F3d 370, 400 (2007).

65.     38 RCNY 5-10, entitled "Grounds for Denial of Handgun License", provides:

"In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00 (1). Such a determination shall be made based upon consideration of the following factors:
(a)   The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.
(b)   The applicant has been other than honorably discharged from the Armed Forces of this country.
(c)   The applicant has or is reasonably believed to have a disability or condition that may affect the ability to safely possess or use a handgun, including but not limited to alcoholism, drug use or mental illness.
(d)   The applicant is or has been an unlawful user of, or addicted to, a controlled substance or marijuana.

(e)   The applicant made a false statement on her/his application, or failed to disclose her/his complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a license to possess a gun.

(f)   The applicant is the subject of an order of protection or a temporary order of protection.

(g)   The applicant has a history of one or more incidents of domestic violence.

(h)   The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

(i)   The applicant has failed to comply with federal, state or local law or with Police Department rules governing possession and use of firearms, rifles, shotguns or ammunition.

(j)   The applicant has been terminated from employment under circumstances that demonstrate lack of good judgment or lack of good moral character.

(k)   The applicant has demonstrated an inability to safely store firearms, such as through a history of lost/stolen firearms.

(l)   The applicant has failed to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities.

(m)   The applicant fails to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter.

(n)   Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings."

66.     The defendants' adherence to, and enforcement of, 38 RCNY 5-10 poses a substantial and significant burden on Mr. Abekassis' right to possess arms at home for self-defense, a core right protected by the Second Amendment.  *Cf. Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395, 401 (E.D.N.Y. 2017) (dismissing Second Amendment claims where plaintiffs were still able to obtain a shotgun or a rifle); *Vaher v. Town of Orangetown*, 916 F.Supp. 2d 404, 430  (S.D.N.Y. 2013) (dismissing Second Amendment claims where "there is no allegation that Defendants' actions have affected Plaintiff's ability to retain or acquire other firearms."); *McGuire v. Village of Tarrytown*, No. 8-cv-2049, 2011 WL 2623466, at *7 (S.D.N.Y. June 22,

2011) (holding that because "defendants did not prevent [plaintiff] from acquiring another weapon, they did not impede plaintiff's 'right to bear arms'").

67.      As a resident of Queens, Mr. Abekassis **cannot legally possess any firearm** in his residence without a license issued by the defendants. Even if Mr. Abekassis were to apply to NYPD for a rifle/shotgun license, the language of 38 RCNY 3-03 mimics the language of 38 RCNY 5-10.

## 38 RCNY 5-10 SUBSTANTIALLY BURDENS THE SECOND AMENDMENT

68.      Heightened scrutiny is triggered by restrictions that, like the complete prohibition on handguns struck down in *Heller*, operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense or for other lawful purposes. *NY State Rifle & Pistol Assn. v City of NY*, 883 F3d 45, 56 (2d Cir 2018) citing, *United States v Decastro*, 682 F3d 160, 166 (2d Cir 2012).

69.      Core Second Amendment rights, like the right to possess firearms in the home for self-defense, are not subject to 'interest balancing'. *District of Columbia v Heller*, 554 US at 634 ("We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

70.      "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad. We would not apply an 'interest-balancing' approach to the prohibition of a peaceful neo-Nazi march through Skokie. See *National Socialist*

17

*Party of America v. Skokie*, 432 U.S. 43, 97 S. Ct. 2205, 53 L. Ed. 2d 96 (1977) (per curiam).

The First Amendment contains the freedom-of-speech guarantee that the people ratified, which

included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression

of extremely unpopular and wrong headed views. The Second Amendment is no different. Like

the First, it is the very product of an interest balancing by the people--which Justice Breyer

would now conduct for them anew. And whatever else it leaves to future evaluation, it surely

elevates above all other interests the right of law-abiding, responsible citizens to use arms in

defense of hearth and home." *District of Columbia v Heller*, 554 US 570, 634-635 (2008).

71.     While handgun possession in the home is *regulated* by the State of New York

through a permit application process, the right to possess arms in one's home is not a 'privilege'

- it remains a pre-existing, fundamental right of all law-abiding individuals that falls within the

scope of the Second Amendment protections.

72.     Under the guise of describing factors and conditions that may constitute a 'lack of

moral character' or 'good cause' to deny an application, 38 RCNY 5-10 unlawfully expands the

enumerated factors of ineligibility enacted by the New York State Legislature in §400.00(1), as

discussed below and substantially burdens a core Second Amendment right.

***38 RCNY 5-10(a) – Denial Based on Arrest/Dismissed Criminal Charges***
***Substantially Burdens Core Second Amendment Rights***

73.     "In addition to other bases for disqualification pursuant to federal, state, and local

law and this chapter, an application for a handgun license may be denied where it is determined

that an applicant lacks good moral character or that other good cause exists for denial, pursuant

to New York State Penal Law § 400.00(1). Such a determination shall be made based upon

consideration of the following factors: (a) The applicant has been arrested, indicted or convicted

for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction. 38 RCNY 5-10(a)."

74.     The NYS Legislature enacted specific enumerated factors of ineligibility for the issuance of a pistol license, as codified in Penal Law §400.00(1). Had the NYS Legislature intended an arrest in and of itself and/or a criminal charge that has been dismissed or reduced to a non-criminal violation, sufficient to render an individual ineligible for the issuance of a pistol license, they would have enacted such language.

75.     The NYS Legislature confined ineligibility related to criminal acts to adjudicated convictions for felonies and serious offenses.

76.     New York State Law does not require a license to possess rifles and shotguns.  In that connection, the NYS Legislature enacted §265.01, which criminalized the possession of rifles and shotguns by individuals who have been convicted of a felony or serious offense. No disqualifier based on arrest alone, traffic infractions or summonses constitutes a prohibiting factor to long gun possession under the Penal Law.

77.     New York City, however, does require a license to possess a long gun. Mr. Abekassis does not have a rifle/shotgun license and, therefore, has no other means of possessing a firearm for home protection.

78.     It is beyond cavil that an arrest, in and of itself, has little to no probative value with regard to an individual's character. *People v Smith*, 27 NY3d 652, 662, n 1 (2016), citing, *People v Miller*, 91 NY2d 372, 380, 670 NYS2d 978 (1998); *People v Rodriguez*, 38 NY2d 95, 101, 378 NYS2d 665 (1975); *People v Morrison*, 194 NY 175, 178, 23 NY Cr 173 (1909); *Michael v. Arato Safir*, INDEX No. 109242/99 (Sup. Ct., NY Co., Zweibel, J.) (holding that the NYPD acted arbitrarily and capriciously in revoking licensee's handgun permit, because it

irrationally narrowed its attention to one long-ago dismissed charge instead of reviewing the full record); see also, Fed. R. Evid. 609(b).

79.     Mr. Abekassis has no criminal convictions.

80.     The defendants denied Mr. Abekassis' application for a Residence handgun license under on 38 RCNY 5-10(a) based on an arrest that occurred approximately 17 years ago.

81.     Mr. Abekassis' arrest at the age of 16 was referred to the City of New York Law Department's Family Court Division, investigated, rejected as a non-prosecutable offense, and sealed.

82.     Nothing in Mr. Abekassis' past warrants stripping him of his pre-existing fundamental right to possess handguns in his home for self-defense, which falls squarely within the protections of the Second Amendment. See, *District of Columbia v. Heller,* supra.

83.     Preventing an individual from lawfully exercising his/her right to possess a handgun for self-defense in the home based on an unproven arrest/charge unlawfully burdens core pre-existing rights falling within the scope of Second Amendment protections.

84.     The defendants' enforcement and implementation of 38 RCNY 10-5(a) violates and substantially burdens Mr. Abekassis' fundamental right to self-protection in his home.

***38 RCNY 5-10(h) – Denial Based on Driving History Violates and Substantially Burdens Core Second Amendment Rights***

85.     "In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00(1). Such a determination shall be made based upon consideration of the following factors: (h) The applicant has a poor driving history, has multiple

20

driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles."

86.     The NYS Legislature's enumerated factors for ineligibility, as codified in Penal Law §400.00(1), do not contain, or even contemplate, rendering an individual ineligible for the issuance of a pistol license because of their driving history, scofflaws, or similar infractions. Had the NYS Legislature intended an arrest in and of itself and/or a criminal charge that has been dismissed or reduced to a non-criminal violation, sufficient to render an individual ineligible for the issuance of a pistol license, they would have incorporated such language.

87.     Mr. Abekassis' driving history is insufficient cause to strip him of his civil rights.

88.     Mr. Abekassis' driving history between 2005 and 2014 is no basis for stripping him of the right to protect himself in his own home, it is no indication of his "moral character" nor does it constitute "good cause" for stripping him of the pre-existing right to possess arms at home for self-protection.

89.     Mr. Abekassis' driving history has not stripped him of his *privilege* to possess a *driver's* license – which is not a constitutional right; it certainly does not rise to the level of seriousness present with other enumerated prohibitors to firearm possession such as felony convictions, dishonorable discharge, involuntary commitment to a mental health facility, and the like.

90.     When Mr. Abekassis' driver's license was suspended for failure to pay fines, he was not thereafter denied the privilege of having a driver's license thereafter, nor was his motor vehicle forfeited. Once Mr. Abekassis became current with the financial obligations related to his driver's license, his driving privileges were reinstated.

91.     Mr. Abekassis driving history and/or financial inability to pay fines does not rise to the level of warranting termination of a pre-existing and fundamental civil right.

92.     Denying a handgun license for self-defense in the home because of an individual's driving history unlawfully burdens core pre-existing rights falling within the scope of Second Amendment protections.

93.     The defendants' enforcement and implementation of 38 RCNY 10-5(a) violates and substantially burdens Mr. Abekassis' fundamental right to self-protection in his home.

### *38 RCNY 5-10(l) – Denial Based on Failing to Pay Fines Violates and Substantially Burdens Core Second Amendment Rights*

94.     "In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00(1). Such a determination shall be made based upon consideration of the following factors: (l) The applicant has failed to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities."

95.     Mr. Abekassis' inability to pay fines related to driving infractions does not rise to the level of seriousness warranting stripping him of his basic and fundamental right to self-protection in his home.

96.     The inability to pay fines related to driving infractions results in a suspension and/or revocation of one's driving privileges, which are reinstated once the individual is current with his obligations. Mr. Abekassis has already been punished by the government for his inability to pay fines on time; he should not suffer additional penalties unrelated to his driving history.

97.     Mr. Abekassis' driving history has not stripped him of his *privilege* to possess a *driver's* license – which is not a constitutional right; it certainly does not rise to the level of seriousness of other enumerated prohibitors to firearm possession such as felony convictions, dishonorable discharge, involuntary commitment to a mental health facility, and the like.

98.     When Mr. Abekassis' driver's license was suspended for failure to pay fines, he was not thereafter denied the privilege of having a driver's license thereafter, nor was his motor vehicle forfeited. Once Mr. Abekassis became current with the obligations related to his driver's license, his driving privileges were reinstated.

99.     Denying a handgun license for self-defense in the home because of an individual's inability to pay fines imposed by the government unlawfully burdens core pre-existing rights falling within the scope of Second Amendment protections.

### 38 RCNY 5-10(n) – Denial Based on Unwillingness to Abide by the Law, Lack of Candor, et al Violates and Substantially Burdens Core Second Amendment Rights

100.    "In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00(1). Such a determination shall be made based upon consideration of the following factors: (n) Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings."

101.    The defendants' enforcement of 38 RCNY 5-10(n) permits the denial of Mr. Abekassis' handgun application based on an arrest from 17 years ago that was declined prosecution, his inability to promptly pay fines associated with his driver's license, a summons for a boating infraction, and traffic infractions.

102.    The defendants' enforcement of 38 RCNY 5-10(n) substantially burdens the core and fundamental right to possess arms in the home for self-defense, as protected by the Second Amendment.

103.    38 RCNY 5-10 incorrectly purports to be consistent with the authorization under §400 to deny a handgun license application "where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00(1)."

104.    38 RCNY 5-10 (a) through (n) are factors that the defendants deem to constitute 'other good cause' to deny an application for a handgun license under Penal Law §400.

105.    38 RCNY 5-10 (a) through (n) are factors that the defendants deem to represent a lack of 'good moral character' necessary for an applicant to be eligible to possess firearms under §400.00(1).

106.    38 RCNY 5-10 (a), (h), (l), and (n) *de facto* improperly create additional classes of *per se* ineligibility for handgun possession not enumerated in Penal Law §400.00(1) nor contemplated by the NYS Legislature.

107.    38 RCNY 5-10 (a), (h), (l), and (n) are facially unconstitutional, and unconstitutional as applied to Mr. Abekassis, as they substantially burden a fundamental right protected by the Second Amendment.

24

**38 RCNY 5-10 IS PREEMPTED BY PENAL LAW §400,** *et seq.*

108.    "A local law regulating the same subject matter [as a state law] is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute." *Matter of Chwick v Mulvey*, 81 AD3d 161, 169 (2d Dept 2010)  citing, *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d at 401; *DJL Rest. Corp. v City of New York*, 96 NY2d at 95; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97-98; *Dougal v County of Suffolk*, 102 AD2d at 532-533; *Matter of Ames v Smoot*, 98 AD2d at 218-219). "Such [local] laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns." *Id.* citing, *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97; *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377.

109.    Penal Law §400 is the exclusive statutory mechanism for the licensing of firearms in New York State. *Matter of O'Connor v Scarpino*, 83 NY2d 919, 920, 615 NYS2d 305 (1994).

110.    Penal Law § 400.00 imposes certain eligibility requirements, including that an applicant must be at least 21 years of age and that the applicant has never committed "a felony or a serious offense". Penal Law §400.00(1).

111.    The only specific authority granted to the licensing authority in the City of New York, the police commissioner, is set forth in §400.00(6), which requires an individual with a non-restricted license who resides outside of the 5 boroughs of New York City to apply for an endorsement of their NYS Pistol License – permission from the police commissioner - should they desire to carry concealed within New York City, subject to certain exemptions:

> "A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that

the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city…"

P.L. §400.00(6).

112.     The defendants are subject to all provisions of §400 with regard to their implementation of procedures for licensing handguns for the residents of New York City.

113.     Section 400 evinces an intent to set forth a uniform system of licensing; it is the "exclusive statutory mechanism" for such licensing. As such, no locality may supplant that licensing requirement, since doing so would undermine the uniformity of the system. *Matter of Chwick v Mulvey*, supra.

114.     If a local ordinance imposed additional requirements for lawful firearms possession, and if each county enacted additional restrictions, the uniformity of the scheme would be destroyed. The state statute, by its detailed nature, left no room for local ordinances to operate. Thus, when the Legislature demonstrated its intent to preempt the field, all local ordinances were preempted, regardless of whether they actually conflicted with the state law. *Matter of Chwick v Mulvey*, 81 AD3d at 163.

115.     The New York SAFE Act [2013] reconfirmed the State's interest in preempting the field of firearm regulation in New York State.

116.     There is ample evidence to demonstrate that the Legislature intended Penal Law §400.00 to preempt local laws with respect to firearm licensing. First, Penal Law §400.00 evinces an intent to set forth a uniform system of firearm licensing in the state and is the exclusive statutory mechanism for the licensing of firearms in New York State. *Matter of Chwick v Mulvey*, 81 AD3d at 171-172 citing, *Matter of O'Connor v Scarpino*, 83 NY2d 919.

26

117.    No locality may supplant the licensing requirements provided by Penal Law §

400.00, since to do so would undermine the system of uniform firearm licensing. *Id.*

118.    38 RCNY 5-10 interrupts this uniformity by imposing additional requirements for

lawful possession of a valid firearms license beyond the State's requirements under §400 by

creating additional burdens over and above those intended by the Legislature. See, e.g., *Matter of*

*Chwick v Mulvey*, 81 AD3d at 171-172.

119.    "Further evidence of the intent to pre-empt is . . . provided by the complete and

detailed nature of the State scheme. Comprehensiveness and detail are important in determining

the existence of an intent to pre-empt…the more comprehensive a statutory scheme, the less

room for local ordinances to operate. *Matter of Chwick v Mulvey*, 81 AD3d at 171-172 (internal

citations and quotations omitted).

120.    Penal Law § 400.00 restricts the realms in which local laws may operate and is

very comprehensive. For instance, Penal Law §400.00 governs, among other things, the

eligibility for a firearms license, the types of available firearms licenses, the application process

for obtaining   a firearms license, the investigation process for each firearms license application,

the filing of approved applications, the validity of issued firearms licenses, the form of each

firearms license, and how firearms licenses must be exhibited and displayed (see Penal Law §

400.00 [1]-[8]). In sum, Penal Law § 400.00 leaves no room for local ordinances to operate.

Instead, the State statutes give localities detailed instructions concerning the procedures to be

employed in licensing firearms. *Matter of Chwick v Mulvey*, 81 AD3d at 171-172 citing, *Dougal*

*v County of Suffolk*, 102 AD2d at 533.

121.    Where the State has preempted the field, a local law regulating the same subject

matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of

27

the local law actually conflict with a State-wide statute. *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377. When the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the state law. *Matter of Chwick v Mulvey*, 81 AD3d at 171-172 citing, *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97; *People v De Jesus*, 54 NY2d at 468-470; *Matter of Ames v Smoot*, 98 AD2d at 217-219).

122.    38 RCNY 5-10 interrupts the uniformity of the statute by imposing additional requirements for lawful possession of a valid firearms license beyond the State's requirements. See, *Matter of Chwick v Mulvey*, 81 AD3d at 171.

123.    38 RCNY 5-10 incorrectly purports to be consist with the authorization under §400 to deny a handgun license application "where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00(1)."

124.    38 RCNY 5-10 (a) through (n) contain factors that the defendants determine to be 'other good cause' to deny an application for a handgun license.

125.    The factors contained in 38 RCNY 5-10 (a) through (n) also constitute judgment by the defendants that an applicant lacks the 'good moral character' to be eligible to possess firearms under §400.00(1).

126.    38 RCNY 5-10 (a), (h), (l), and (n) *de facto* improperly create additional classes of *per se* ineligibility, like the enumerated prohibitors enacted by the NYS Legislature in §400.00(1).

127.    The defendants' enforcement and implementation of 38 RCNY 5-10 (a), (h) and (n) is preempted by §400.00, *et seq.* and should be declared a nullity.

*Article 78 Does Not Provide a Viable Recourse for Mr. Abekassis*

128.     The standard in an Article 78 proceeding is whether the [government's] decision was "arbitrary and capricious". See, *O'Brien v. Keegan*, 87 N.Y.2d 436, 439-40, 663 N.E.2d 316, 639 N.Y.S.2d 1004 (1996)(citing N.Y. Penal Law § 400.00) (A licensing officer's decision will not be disturbed unless it is arbitrary and capricious).

129.     An Article 78 proceeding is not a viable option for Mr. Abekassis to seek recourse for violations of his preexisting right to self-defense in his home, as protected by the second Amendment.

130.     The limited scope of an Article 78 proceeding precludes and prevents a court from considering whether the government's actions violate a preexisting, fundamental right protected by the United States Constitution.

## INJUNCTIVE RELIEF ALLEGATIONS

131.     Mr. Abekassis is being continuously injured, in fact, by (1) 38 RCNY 5-10 (a), (h), (l), and (n); (2) the defendants' enforcement of 38 RCNY 5-10 (a), (h), (l), and (n); and (3) the defendants' determination that his past circumstances constitute "other good cause" and/or "lack of moral character" sufficient to warrant denial of his application for a Residence handgun license, each of which interfere with Mr. Abekassis' preexisting right to possess firearms in his home for self-defense as protected by the Second Amendment.

132.     Mr. Abekassis is suffering irreparable harm by the deprivation of a core Second Amendment right and will continue to suffer such harm without the requested relief.

133.     Mr. Abekassis is suffering irreparable harm by having to choose between exercising his Second Amendment rights and being subject to criminal prosecution.

134.    Mr. Abekassis should not have to risk criminal prosecution in order to exercise his core fundamental right to possess arms for self-defense at home.

135.    The defendants deny the allegations stated herein.

## COUNT I
### 38 RCNY 5-10 SUBSTANTIALLY BURDENS A CORE SECOND AMENDMENT RIGHT

136.    Repeats and realleges paragraphs "1" through and including "135" as if set forth in their entirety herein.

137.    38 RCNY 5-10 (a), (h), (l), and (n) individually and collectively substantially burden a core pre-existing right protected by the Second Amendment, to wit, the right to posses firearms for self-defense in the home.

138.    38 RCNY 5-10 (a), (h), (l), and (n) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate constitutional rights protected by the Second Amendment, 42 U.S.C. §1983.

139.    The defendants' implementation and enforcement of 38 RCNY 5-10 (a), (h), (l), and (n) collectively and individually substantially burdens a core pre-existing right protected by the Second Amendment, to wit, the right to posses firearms for self-defense in the home generally and as applied to the plaintiff.

## COUNT II
### THE DEFENDANTS' ENFORCEMENT OF PENAL LAWS §265.01(1), §265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) SUBSTANTIALLY BURDENS A CORE SECOND AMENDMENT RIGHT

140.    Repeats and realleges paragraphs "1" through and including "139" as if set forth in their entirety herein.

30

141.    The defendants' enforcement and implementation of criminal penalties under Penal Laws §265.01(1), §265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) violate the plaintiff's civil rights by forcing him to choose between exercising a core fundamental right to possess arms for self-defense in his home and being subject to criminal prosecution.

142.    Penal Laws §265.01(1), §265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) should be enjoined and stricken as unconstitutional as applied to the plaintiff and other law-abiding individuals with no enumerated prohibitors to firearm possession under §400.00 who possess firearms in their home for self-defense but been denied a Residence license by the NYPD License Division based on 38 RCNY 5-10 (a), (h), (l), and (n) collectively and/or individually, as law-abiding individuals should not have to choose between exercising a core right protected by the Second Amendment and being subject to criminal prosecution.

143.    The defendants' implementation and enforcement of criminal penalties under Penal Laws §265.01(1), §265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) constitutes a continuous violation of core fundamental human rights protected by the Second Amendment, to wit, the pre-existing right to possess firearms for self-defense in the home, generally and as applied to the plaintiff.

**COUNT III**
**38 RCNY 5-10 IS PREEMPTED BY PENAL LAW §400.00**

144.    Repeats and realleges paragraphs "1" through and including "143" as if set forth in their entirety herein.

145.    Penal Law §400 is the exclusive statutory mechanism for such firearm licensing and pre-empts local laws.

146.    38 RCNY 5-10 is pre-empted by Penal Law §400.00(1) and should be declared a nullity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the defendants as follows:

- An Order preliminarily and permanently enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 5-10 (a), (h), (l), and (n) collectively and individually;

- An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction, from enforcing Penal Law §§265.01(1), §265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), 265.15(6) against law-abiding individuals with no enumerated prohibitors to firearm possession under §400.00 who possess handguns for self-defense in their residence but have been denied a Residence handgun license by the NYPD License Division based on 38 RCNY 5-10 (a), (h), (l), and (n) collectively and/or individually;

- A declaration that 38 RCNY 5-10 sections (a), (h), (l), and (n) individually and collectively are unconstitutional on their face, and as applied to the plaintiff, as they each unduly burden and violate fundamental pre-existing rights protected by the Second Amendment to the United States Constitution;

- A declaration that 38 RCNY 5-10 sections (a), (h), (l), and (n) are nullities and preempted by NYS Penal Law §400.00(1);

- A declaration that New York Penal Codes Penal Law §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), and §265.15(6) are unenforceable against

eligible, law-abiding individuals who have no enumerated prohibitors to firearm

possession under Penal Law §400.00, possess handguns for self-defense purposes in

their residence, but have been denied a Residence handgun license by the NYPD

License Division under the provisions of 38 RCNY 5-10 (a), (h), (l), and/or (n)

collectively and/or individually;

- Reasonable statutory attorney's fees, costs, and disbursements, under 42 USC §1988 and any other applicable law; and

- Grant such further and alternative relief as the Court deems just and proper.

Respectfully submitted,


Dated: August 27, 2019
     Scarsdale, New York                THE BELLANTONI LAW FIRM, PLLC
                                            *Attorneys for Plaintiff*

                                  _____/s/_____
                                    Amy L. Bellantoni (AB3061)
                                    2 Overhill Road, Suite 400
                                    Scarsdale, New York 10583
                                    abell@bellantoni-law.com
                                    (914) 367-0090 (t)
                                    (888) 763-9761 (f)